UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                     Case No. 13-20764

v.

                                     Paul D. Borman
                                     United States District Judge

MARVIN NICHOLSON, ET AL.,

       Defendants.
_____/

OPINION AND ORDER
DENYING DEFENDANTS' JOINT MOTION FOR MISTRIAL (ECF NO. 426)

On March 3, 2015, Defendants filed the instant motion for mistrial. (ECF No. 426). The Government has not filed a timely response.

The instant case involved a fifteen count, seven Defendant indictment against the Phantom Outlaw Motorcycle Club charging, *inter alia*, RICO Conspiracy, 18 U.S.C. § 1962(d); Assault with a Dangerous Weapon in Aid of Racketeering, 18 U.S.C. § 1959(a)(3)-2; Use and Carry of a Firearm During, and in Relation to a Crime of Violence, 18 U.S.C. § 924(c), and Conspiracy to Commit Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5); Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1).

The instant motion relates to a situation that occurred during trial when a sitting juror sent a note to the Court after the conclusion of the Court session on Thursday, February 19, 2015, stating that after jury service on the previous day, Wednesday,

February 18, 2015, he had been followed by a silver Ford Taurus containing two occupants while driving from the Courthouse back to his community. (Redacted Note attached as Exhibit A).

Relevant Legal Precedent

The Court then consulted and applied the relevant precedent established by the Supreme Court in its two decisions in *Remmer v. United States*, 347 U.S. 227 (1954) ("*Remmer I*") and 350 U.S. 377 (1956) ("*Remmer II*"), and by the Sixth Circuit in its two decisions in *United States v. Corrado*, 227 F.3d 528 (6th Cir. 2000) ("*Corrado I*") and 304 F.3d 593 (6th Cir. 2002) ("*Corrado II*").

In *Remmer*, the allegation was that one juror had been directly approached by "an outsider, with a suggestion that its juror could make some easy money if he would make a deal with petitioner Remmer". *Remmer II*, 350 U.S. at 378. The trial judge reported the matter to the FBI for an investigation; he did not report it to Defendant and his counsel.

In *Remmer I*, the Supreme Court held:

> We do not know from this record, nor does the petitioner know what actually transpired, or whether the incidents that may have occurred were harmful or harmless. ... The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Remmer I*, 347 U.S. at 229-30. The Supreme Court remanded "to the District Court with directions to hold a hearing to determine whether the incident complained of was harmful

to the petitioner ..." *Id*.

The Supreme Court in *Remmer II*, focused on "the question of the effect of its extraneous communications with the juror upon the petitioner's right to a fair trial," *Remmer II*, 350 U.S. at 378, pointing out that the juror's testimony made it "quite evident that he was a disturbed and troubled man from the date of the Satterly contact until after the trial." *Id*. at 381.

In *Corrado I*, an individual told a defendant that the had a "friend" on the jury who could assist in obtaining a favorable verdict for the defendants. *Corrado I*, 227 F.3d 528, 533 (6th Cir. 2000). The Sixth Circuit, citing *United States v. Rigsby*, 45 F.3d 120, 124-25 (6th Cir. 1995), held that "when there is a credible allegation of extraneous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." *Corrado I*, at 536. The Sixth Circuit held that "the nature and scope of the investigation required" was set forth in *Remmer v. United States*, 74 S. Ct. 450 (1954). The Sixth Circuit found insufficient the district judge's "three broadly-worded questions to the jury as a group". *Corrado I*, at 537, and remanded the case to the district court for a *Remmer* hearing.

In *Corrado II*, the Sixth Circuit noted that it had previously held that:

> the district court erred in not holding a *Remmer* hearing to determine whether the jury verdict had been tainted by an attempted act of jury tampering.

*Corrado II*, 304 F.3d 593, 597 (6th Cir. 2002) (internal footnote omitted, citing *Corrado*

3

*I*, 227 F.3d at 537). The Sixth Circuit, affirming the district court conclusions post-*Remmer* hearing, found that there was no evidence to establish prejudice by the jury-tampering conduct or any evidence to establish that the jury's verdict was tainted.

> The defendants' arguments that this court should presume that the jury's verdict in the present case was tainted are contrary to binding precedent and thus must be rejected. *See United States v. Orlando*, 281 F.3d 586, 597-98 (6th Cir. 2002) (reaffirming that the burden is on the party claiming juror bias and that a reasonable possibility of taint is insufficient to carry that burden).

*Corrado II*, at 603. Thereafter, the Sixth Circuit stated:

> We have previously held, however, that a juror's testimony regarding his or her own impartiality should not be treated as "inherently suspect." ... In [*United States v.*] *Pennell*, we explicitly held "that if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." 737 F.2d [521,] 533 [(6th Cir. 1984)].

*Corrado II*, 304 F.3d, 603. The *Corrado II* opinion further held:

> Given *Pennell*, we hold that the district court did not abuse its discretion in the present case. The district court questioned the jurors individually about the jury tampering incident and news coverage of it and determined that their negative responses to the questions were reliable.

*Id*. at 604.

The Instant Case

On Friday morning, February 20, 2015, the morning after receiving the note, the Court provided the parties with a copy of the note, and conferred with them about the Court's intentions. The Court then conducted an *in camera* on-the-record separate voir dire of each of the sixteen sitting jurors in the presence of counsel; defense counsel had

4

waived the presence of the Defendants.[1]

The Court began the individual juror voir dire with the juror-author of the note, questioning him as to the specifics of his recollection regarding: (1) what occurred that led to him writing the note; (2) whether he spoke about the occurrence with his fellow jurors; (3) if yes, what did he say; (4) given this occurrence, could he, in all fairness to the Defendants, continue to serve as a fair and unbiased juror in this case and give the Defendants a fair trial. The Court also ordered that he not discuss the incident with this fellow jurors upon his return to the jury room.

Thereafter, the Court individually questioned each of the remaining fifteen jurors with regard to: (1) whether the juror who authored the note spoke to them about the note; (2) if yes, did they understand, and could they accept the fact that none of the Defendants or their families or friends were involved in the incident; (3) could they continue to serve as fair and unbiased jurors in this case.

During that individual voir dire, one juror, who could not fully accept the fact that the Defendants or their families or friends were not involved in the incident, was dismissed in Court with the consent of all counsel, and immediately separated from the other jurors. Thereafter, based on the questions to the jurors and their responses, the Court concluded that they could continue to sit as fair and unbiased jurors in this case. The Court denied Defendants' oral motion for a mistrial.

---

[1] The Court attaches the relevant trial transcript of the *Remmer* hearing held on Friday, February 20, 2015. (*See* Exhibit B, Tr. 2/20/15 at 8-9, 11-15).

Analysis

In the instant case, this Court determined the circumstances of the incident and its impact upon the author-juror and the other jurors, and also whether or not the incident was prejudicial to the Defendants' right to a fair trial in a hearing with defense counsel present.  Further, as stated on page 14 of the trial transcript, the Court permitted defense counsel to participate (defense counsel Arthur Weiss) by providing written requested questions for the Court to consider, and in some cases, to incorporate into its questions to the jurors.  Thus, in response to defense counsel's suggestions, the Court added:

> Let me ask, you understand that none of the defendants, in this case, are involved in this, do you understand that?

(Trial Tr., 2/20/2015, p. 14:6–13).  Thereafter, defense counsel Michael Rataj requested that the Court "drill a little bit deeper" with regard to the possible involvement by Defendants in this incident.  (Trial Tr. 2/20/2015, p. 16:12-24).  Based on that request, the Court added the phrase "or anyone associated with them" to its question, to read:

> Do you understand that none of the defendants or anyone associated with them is involved in this, you understand that?

(Trial Tr. 2/20/2015, at 17:9-11).

Thus, in the instant case, this Court responded immediately to the juror's note, and held a hearing with the defense counsel present to determine the circumstances of the incident, the impact upon the author-juror, and then upon each of the other jurors, and also to evaluate whether or not the incident was prejudicial.

Additionally, the Court also notes that the circumstances in this case are distinguishable from those in *Remmer* and *Corrado*. In the instant case, the incident at issue did not involve any contact or communication with the juror, or gesture toward the juror, nor did anyone approach the juror, and there was no aggressive driving toward the juror.

Conclusion

The Court concludes that the record made in the Court on February 20, 2015 satisfies the requirements set out in *Remmer* and *Corrado*. The Court further concludes that the responses by the jurors to the questions asked by the Court, which included additional questions suggested by the attorneys, were thoughtful, credible, and clearly established that the jurors were not prejudicially impacted by the incident, and, based on their responses, that the Defendants would, and indeed did, receive a fair jury trial. Accordingly, the Court DENIES Defendants' Motion for a Mistrial.

SO ORDERED.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated:  April 10, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 10, 2015.

                                              s/Deborah Tofil
                                              Case Manager